THOMAS MEACHEM, PROSECUTOR, v. THE COMMON COUNCIL OF THE CITY OF NEW BRUNSWICK.

Submitted July 7, 1905—Decided November 22, 1905.

1. The common council of the city of New Brunswick, in declaring vacant a seat of one of its members under the provision of the charter that the common council shall be the sole judge of election, returns and qualification of its own members, is subject to the supervisory jurisdiction of this court.
2. The proceedings set aside, it appearing that the action of the common council was not justified by any evidence whatever.

---

On *certiorari*.

Before Justices GARRISON and GARRETSON.

For the prosecutor, *Robert Adrain*.

For the defendant, *Theodore B. Booraem*.

The opinion of the court was delivered by

GARRETSON, J.  This writ brings up the proceedings of the common council of the city of New Brunswick as to the investigation of the right of the prosecutor to a seat in that body and the action of the common council in declaring that seat vacant.

At the meeting of January 2d, 1905, a protest, dated on that day, signed by one Lewis A. Board, who seems to have been the opposing candidate at the election, was presented against the seating of the prosecutor as a member, for the reason that he had not been duly elected.  It further sets forth that on November 8th, 1904 (election day), when it was claimed that said Meachem was elected for the sixth ward, no election was in fact held in the first election district of that ward, and the majority of twenty-four votes found by the county canvassers to have been received at said election by Meachem over the petitioner was the result only of the election held in the second election district of that ward and represents the choice of the voters of only about one-half of said ward, the voters of the first election district of that ward being prevented from voting by the failure to hold any election in said district.  The protest further sets forth that if an election had been duly held in said first election district on said day the normal majority at that poll in favor of the Republican ticket, on which the protestant was a candidate, which normal majority was much increased at said election throughout the city and in the county generally, would have more than overcome the majority of said Meachem at said second poll, and would have. elected the protestant instead of Meachem to the office of alderman.

Upon the protest being filed a resolution was adopted "that this board investigate and inquire into the alleged election of said Thomas Meachem to the office of alderman in and for the sixth ward, and his right to be a member of the board, and determine the same, and that Monday, the 9th day of January instant, at eight o'clock in the evening, at the common council chamber, is hereby fixed as the time and place when said board will proceed with said investigation and in-

quiry and determination, and the said Thomas Meachem is hereby notified to attend at said time and place and show cause why he should not be excluded from membership in this board and his seat declared vacant."

Upon the 9th of January the investigation proceeded according to the return as follows:

Counsel "for the protestant said the investigation was a sort of judicial inquiry and he would present his case as if before a court. He first offered in evidence a copy of the county board of canvassers' statement filed with the city clerk, and produced at his request by the clerk, which showed that Thomas Meachem had been declared elected in the sixth ward and that the county board has certified that no votes were cast in the first poll of the sixth ward. The statement showed that in the second poll two hundred and twenty-four votes were cast for Lewis M. Board and two hundred and forty-eight for Thomas Meachem, giving Meachem a majority of twenty-four in that poll."

Protestant's counsel "then asked if William Rastall was in the room. Mr. Rastall came forward and was called as a witness by protestant's counsel. He was sworn by the city attorney at the request of President Groves."

Mr. Rastall was questioned by the protestant's counsel as follows:

"Were you a member of the election board of the first poll in the sixth ward, one of the clerks at the last election?"

"I was," was the answer.

"Was there any election held at that poll on election day, November eighth?"

"No, sir."

"Were you there all that day?"

"I was there until two o'clock in the afternoon."

"That is all," said the lawyer.

"No questions," said incumbent's counsel.

Protestant's counsel said he had nothing further to present. Incumbent's counsel "asked if he did not intend to open up the whole matter." Protestant's counsel said "he

had nothing else," and incumbent's counsel "said he had nothing then to offer."

"I move," said Alderman Owens, "that the seat of Mr. Thomas Meachem be declared vacant."

"I second the motion," said Alderman Orpen.

"The roll call was ordered and was as follows:

"Ayes—Blue, Collins, Groves, Hendricks, Hope, Mailler, Orpen, Owens—8.

"Nays—Oliver, Puerschner, Zaker—3.

"The name of Alderman Meachem was called, but he did not vote. The president declared the motion carried and the seat of Alderman Meachem vacant.

"The board then adjourned."

There was nothing in any of the evidence above adduced that could satisfy a judicial mind that the prosecutor was not entitled to his seat. The only legal, pertinent testimony, the return of the board of canvassers, went to prove his title.

Whether the council be regarded as a board of canvassers or as a *quasi*-judicial tribunal, there was nothing in the testimony thus before it that would justify its action, for the only canvass of the votes that was made showed that the prosecutor was elected, and the only other fact adduced was that no other votes than those canvassed had been cast. Upon this latter point it will be observed that there was no testimony that any persons who desired to vote had been prevented from doing so, or that such persons would have voted against the prosecutor, or that the number of those so desiring was sufficient to overcome the certified majority of the prosecutor.

There was therefore no evidence that justified the council in its nullification of the election of its duly certified member unless the bare fact that no ballots were returned from a given polling place was of itself a legal and sufficient ground for such a decision. That this is not so is conclusively shown by Judge McCrary in his work on elections. *McCr. Elect.* (*4th ed.*), *p.* 380, § 522.

The further consideration that under such a rule the failure of a single voting machine to operate would nullify an

entire election for state or county officers is of itself sufficient to make us pause before giving our assent to such a doctrine.

The action of the common council is claimed to be justified upon the ground that by the charter of the city of New Brunswick (*Pamph. L.* 1863, *p.* 347) it is provided in section 26 "that the common council shall * * * be the sole judge of the election, returns and qualifications of its own members."

The common council by the section above quoted is made a judge, and it must exercise its judgment and not its arbitrary will upon these matters. ᐧ And that judgment is subject to the regularly organized judicial tribunals.

The provisions in the state and federal constitutions that each house of the legislative bodies shall be the judge of the elections, returns and qualifications of its own members stands upon quite a different footing from the like provision in the charter of the defendant.

The federal and state legislatures are creatures of the federal and state constitutions and constitute one of the three branches of government provided for by those instruments, which also contain distinct provisions against interference by each branch with the other.

The provision in the city charter is a grant by the legislature of one right and power, together with many others, all of which are under the superintending jurisdiction of the courts of law. A clause in the charter of a municipal corporation that the city council "shall be the judges of the election, return and qualifications of their own members and of all other officers of the corporation" was held by the Supreme Court of Delaware not to oust the Supreme Court of the state (invested with the usual powers of the King's Bench) of its superintending jurisdiction over corporations, and it was declared that if the council should erroneously decide that a person duly elected by the people to any office was not qualified to hold it, a *mandamus* might issue commanding them to admit him to office. *State* v. *Wilmington,* 3 *Harr.* (*Del.*) 294; 1 *Dill. Mun. Corp.* (4th ed.), § 203.

It is urged, however, that even if the action of the common

council be without legal support or justification, it is not within the power of this court to review it upon *certiorari.*

This contention, however, loses sight of the constitutional and prerogative power of the Supreme Court of this state to review the proceedings of all special statutory tribunals, and ignores the established doctrine of our courts that the legislature is powerless to take away or to abridge such prerogative. *East Orange* v. *Hussey,* 41 *Vroom* 244, and cases there cited.

The common council, when sitting in judgment upon the election of one of its own members, does so by virtue of the grant of legislative authority contained in its charter. It is, in fine, a special statutory tribunal for that purpose, and as such is subject to the supervisory jurisdiction of this court, regardless of the language in which such special authority has been conferred upon it. The remarks of general text-writers upon this subject to the contrary simply ignore the provisions of our constitution and disregard our doctrine touching the inviolability of such prerogative powers as are perpetuated by it.

This jurisdiction was exercised by this court in the case of *Kendell* v. *Camden,* 18 *Vroom* 64. This was a *certiorari* to the city council of Camden to review the proceedings concerning the trial for removal of the prosecutor from his office as councilman. The prosecutor having been returned elected in March, 1883, and having been sworn in, a petition and notice of contest was presented which was referred to a committee of five, who investigated and made a report to the council. This report was adopted and the prosecutor retained his seat. In March, 1884, the same contestant filed a notice of contest, and a committee of five was appointed to investigate that claim. This action was reviewed by *certiorari.* Justice Scudder, in the opinion, cites the provision of the Camden city charter, which is identical with that in the New Brunswick charter, and goes on to say: "But this council, like all other special statutory tribunals, is subject to the supervisory jurisdiction of this court when it departs from or exceeds the express terms of the power given in the charter.

It was a mistake made in the argument of counsel when he claimed the same exclusive authority for a city council having a charter like this as that exercised by congress or the legislatures of our states. They are co-ordinate branches of the government under the constitution and cannot be controlled by the judiciary in the discharge of their appropriate functions. The constitution has divided the powers of government into distinct departments and cautiously provided for their independent exercise. It has expressly forbidden any person belonging to or constituting one of these departments from exercising any of the powers properly belonging to either of the others, except as expressly provided in the constitution itself. But municipal bodies have only such powers as are given them by the legislature, and in the exercise of these have not the independent authority to act without control by the court, which belongs to the legislative branch of state government. How far they will be controlled in the exercise of this particular power given to a common council to judge of the election and qualification of its members, it is said, depends on the exact language in which the provision is couched, viewed in the light of the general laws of the state on the subject of contested elections and *quo warranto.* But whatever may be the extent or limitations of the authority given, it is the province of this court to see that no arbitrary act is done under the guise of legislative sanction to deprive citizens of their right of representation or to unseat a candidate who, by the proper and final tribunal, has been adjudged to be elected."

There was no evidence to justify the action of the common council, and the proceedings are set aside, with costs.