PATRICK F. TREMBLAY, Pet'r *vs.* GEORGE A. MURPHY, Applt.

JOHN LACROIX and W. S. KEENE

*vs.*

GEORGE Z. BERNIER and GEORGE A. WELCH.

Androscoggin.   Opinion August 6, 1913.

*Appeal.   Bill in Equity.   Claimant.   Election.   Joint Convention.   Jurisdiction.
Municipal Officers.   Officers.   Public Election.   Revised Statutes, 1903,
Chapter 6, Section 70.   Revised Statutes, 1841, Chapter 1,
Section 3.   Revised Statutes, Chapter 4, Section 55.*

1.   Under chapter 6, section 70, of the Revised Statutes the court had jurisdiction in the cases, and that any municipal office is included, whether to be filled by election, by the people, or by a city council, or separate boards thereof.
2.   This municipal board, acting under the city charter, is constituted a court for the time being, and sitting as a judge upon the election of its own members, its functions are clearly judicial.
3.   In the absence of statutory provisions establishing a safe and reasonable mode, of procedure in such cases, required to be observed by municipal boards, when sitting as judges, the rule of the common law must govern.
4.   Municipal boards, when sitting in such cases, should give to all parties interested reasonable notice and an opportunity to be heard.
5.   As an aid in ascertaining the legislative intent, the court may look at the object in view, the remedy to be afforded, and the mischief to be remedied.
6.   In construing a statute, the intention of the Legislature must govern and the language of the statute itself is the vehicle best calculated to express that intention, and such intention cannot be ascertained by adding to or detracting from the meaning conveyed by the plain language used.

On appeal by Patrick F. Tremblay, Pet'r., against George A. Murphy, and by John LaCroix and W. S. Keene, Pet'rs., against George Z. Bernier and George A. Welch.   Appeal sustained without costs.

This is a proceeding under Sections 70 to 73 inclusive of Chapter 6 of the Revised Statutes by Patrick F. Tremblay, petitioner,

against George A. Murphy for the office of collector of taxes for
the city of Lewiston, and by John LaCroix and W. S. Keene
against George Z. Bernier and George A. Welch for the office of
assessors of taxes for said city of Lewiston. These cases, with
several others involving the rights to various municipal offices in
said Lewiston, were heard by SITTING JUSTICE SAVAGE, and by a
decree of said Justice, Patrick F. Tremblay was declared duly
elected to the office of tax collector and John LaCroix and W. S.
Keene were declared duly elected to the office of assessors of the
city of Lewiston. From this decision, an appeal was taken by
George A. Murphy, George Z. Bernier and George A. Welch
respectively. The case is stated in the opinion.

*McGillicuddy & Morey,* for Murphy, Bernier and Welch.

*White & Carter, and Newell & Skelton,* for Lacroix, Keene and
Tremblay.

SITTING: SPEAR, CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.
MR. JUSTICE HALEY concurred in the result.

SPEAR, J.   Chief Justice Savage heard all these cases and ren-
dered a decision in favor of the petitioners, from which George
A. Murphy, claimant to the office of Collector of Taxes, and
George Z. Bernier and George A. Welch, claimants for the office
of Assessors, appealed. We adopt in full, with a single exception,
the following finding of facts by CHIEF JUSTICE SAVAGE as the basis
upon which the opinion of the court will proceed. The exception
relates to the clerical error in stating that the original statute
applied to the Judge of Probate, when an inspection shows that it
applied to all county officers including the Judge of Probate.

### THE FINDING.

These cases are petitions brought under Revised Statutes, Chap-
ter 6, Section 70 by persons claiming to have been elected to cer-
tain municipal offices in the city of Lewiston, and were all heard
together.

The first question presented is whether the court has jurisdiction
to determine the election of these persons. They claim to have

been elected by joint convention of the boards of mayor and alder-men and common council in the city of Lewiston to the offices of city physician, city solicitor, city auditor, member of board of water commissioners, fire commissioner, collector of taxes and assessors of taxes.

Section 70 as originally enacted in 1880 provided that persons claiming to have been elected to the office of Judge of Probate or county attorney might maintain such a petition. By an amendment adopted in 1893, the section was so amended as to read: "Any person claiming to be elected to any county or municipal office or to the office of county attorney may maintain this proceeding as in equity." It is contended that inasmuch as the election referred to in the original act necessarily related only to elections by the people, that under the amendment of 1893 the section should have the same restricted meaning, and that only such municipal officers as may be elected by popular vote can maintain this petition. But the statute is very broad as it now stands and says that any person claiming to be elected to "any municipal office" may maintain a petition. And although the question is not free from doubt I think the statute intended to give to claimants of all municipal offices the same right to a speedy determination of a disputed elec-tion as claimants of other offices have and not leave them to the remedy of quo warranto, which ordinarily could not be effective until the terms of office have expired or nearly so, and therefore I hold that these petitions are properly brought and that the court has jurisdiction.

After the municipal election in March, 1913, certain persons claim-ing to have been elected to the common council of Lewiston brought petitions before a Justice of the Supreme Judicial Court to deter-mine their right to the office of common councilman. Their oppo-nents had been declared by the ward officers to have been elected. A hearing was had and on the 14th day of March decision was rendered to the effect that the petitioners, Messrs. Kernan and Coombs had been elected, and that the defendants, Messrs. Sullivan and Hebert had not been elected, and the same day the defendants had notice entered on the docket of an intention to appeal, but

this I regard as of no consequence inasmuch as the statute does not require such notice.

## CITY COUNCIL ORGANIZES.

On Monday, March 17, the city government organized. The common council elected a president and clerk and adopted rules of procedure. Thereupon the common council, by resolution reciting the proceedings before the Justice of the Supreme Judicial Court and his decision, unseated Sullivan and Hebert who held certificates of election, and seated Kernan and Coombs. On March 24 the defendants of that proceeding filed a formal appeal from the decision of the Justice, which was served on the first or second day of April following.

On April 4th there was a meeting of the city government. By direction of the mayor, police officers were stationed at all the doors leading to the common council chamber which had not been locked, and all persons except certain ones whose names had been given to the officers were excluded. Sullivan and Hebert were admitted to the common council chamber; Kernan and Coombs were excluded. The door to the council chamber was left open, officers guarding it. There were also two windows opening from the chamber into the corridor which were open or partially so. The board of mayor and aldermen passed an order for a joint convention for the election of city officers and sent it down to the common council for concurrence.

The common council voted not to concur, the clerk calling the names of Kernan and Coombs, who answered from the corridor, and not calling the names of Sullivan and Hebert. Thereupon one of the councilmen moved to elect a temporary clerk on the ground that the duly elected clerk refused to call the names of Sullivan and Hebert. The president declared the motion out of order and declined to admit an appeal. Thereupon the councilman put the motion himself and was elected temporary clerk, he calling the names of Sullivan and Hebert and omitting the names of Kernan and Coombs. The roll of the common council was called by Kerrigan, including Sullivan and Hebert, but excluding Kernan and Coombs, and on this roll call it was voted to concur in the order

for a joint convention. Then the regular clerk went to the chamber of the mayor and aldermen, followed by the so-called temporary clerk, and presented to the mayor, the common council's endorsement upon the order for a joint convention, to wit: "Voted not to concur, Eugene Cloutier, clerk." The temporary clerk informed the mayor that he had been elected temporary clerk, and was directed by the mayor to make an endorsement which he did in these words: "Voted to concur," and joint convention was in order, and they signed it. The mayor then ruled that board go to the common council room, where an election was had wherein these respondents were voted for and declared elected, Sullivan and Hebert being allowed to vote, and their votes being necessary to an election, while Kernan and Coombs were not allowed to vote. The public were still excluded from the room. In this joint convention 15 voted, including Sullivan and Hebert. All others retired from the chamber. The city council of Lewiston consists of seven aldermen and twenty-one councilmen. Later the appeal from the decision of the presiding Justice in the election petition was affirmed by the Supreme Court, and Kernan and Coombs were declared elected to the common council. After the decision of the Law Court another convention was held, May 19, 1913, regular in form at which these petitioners were elected respectively to the several officers, and they have brought these petitions.

The petitioners contend that the election of April 4 was void for two principal reasons: First, that the meeting was not public as the charter of the city of Lewiston requires, and therefore, that the proceedings were void; secondly, that the election of April 4th was void on the ground that two persons authorized to vote were not permitted to vote, and that two persons unauthorized to vote did vote and that their votes were necessary to make a quorum and accomplish the election.

Although the election was not public in any proper sense of the word, I do not place my decision upon that ground.

Although the convention was held under circumstances forbidden by the charter, I do not think it necessarily follows that the election would be void if only proper persons voted, and every man who had a right to vote was permitted to do so. But it needs no argu-

ment to show that if persons properly entitled to vote were prevented by force from attending the meeting and voting, and others who had no right to vote were present and did vote and determine the election, that the election should be declared void. So that ultimately the question resolves itself as to whether Sullivan and Hebert had been legally unseated and Kernan and Coombs legally seated.

The defendants say first that section 70 before referred to virtually repealed that provision of the city charter of Lewiston which provides that each board of the city government "shall judge of the election of its own members," and secondly, that inasmuch as the petitioners resorted to the court to have their election determined, and inasmuch as the question was still before the court, the defendants having a right to appeal, that the city council then had no jurisdiction and could not lawfully unseat Sullivan and Hebert.

I do not take that view of it. Undoubtedly the action of the court upon a petition in the end is binding, but I do not think the fact that these two councilmen petitioned the court to have their rights definitely determined in accordance with the statute prevented the city council, which had rights in the matter and represented the public, from taking such action as they saw fit. The right of the council to determine its own members is primary, subject to revision of the court, and until the court has decided definitely as to the legality of the election of the members, it seems to me that it was within the power of the common council to pursue the power given them by the charter.

So that I conclude that the election held by the joint convention on April 4th was void, and that no one of the officers there elected has any title to his office.

There are some special objections, however, raised, which it is necessary to consider. It is claimed in defense that the petition of LaCroix and Keene, claiming to be elected assessors of taxes, cannot be maintained for the reason that the jurat attached to the petition does not contain the name of W. S. Keene. The petitioner, Keene, moved for leave to amend the petition by having his name inserted in the jurat, I find that as a matter of fact the petition was

signed by Keene and that he made oath to it, but by inadvertence his name was left out of the jurat. I think the error is amenable and I grant the amendment prayed for. In both conventions each assessor was elected for the term of three years but it is claimed that that is error, that one of the assessors should only have been elected for two years. It appears that some years before that an assessor had resigned after serving only one year and his successor was elected for a term of three years when he should have been elected only for the unexpired balance of the term of his prede-cessor, so that at the time of the election in April there was a vacancy for one entire term of three years and another vacancy for two years of an unexpired term, and it is claimed that these petitioners having joined in a petition it is impossible to tell which is entitled to the three year term and which to the two year term. But I do not think that follows.

The records show that in the convention of April 4, George A. Welch was first declared elected assessor for the term of three years. That being so the only remaining assessor to be elected was one for two years and although George Z. Bernier was recorded as elected for a term of three years, his term necessarily would be limited to two years. And so of the election held by the latter joint convention when the petitioners were elected. John LaCroix was first elected assessor of taxes for three years. Keene was after-wards elected to the remaining vacancy which was really only for two years, although otherwise recorded. So that John LaCroix is the petitioner claiming the office to which George A. Welch was declared elected, and W. S. Keene the claimant for the office to which George Z. Bernier was declared elected.

It is further contended in defense that Patrick F. Tremblay, claimant of the office of collector of taxes is not entitled to main-tain the petition because he has as yet filed no bond. It appears in evidence that he has taken the oath; that the board of mayor and aldermen have not fixed the amount of his bond, and that the board has held no meeting since election. Under these circumstances I think he is entitled to maintain the petition.

The petition in each case is sustained with cost.

THE OPINION.

The first question raised is one of jurisdiction. Section 70, chapter 6, R. S., under which the petitions are brought reads as follows: "Any person claiming to be elected to any county or municipal office, or to the office of county attorney, may proceed as in equity against the person holding or claiming to hold such office, or holding a certificate of election to such office, or who has been declared elected thereto by any returning board or officer, or who has been notified of such election, by petition returnable before any justice of the supreme judicial court, in term time or vacation, in the county where either party resides, or where the duties of such office are to be performed, and said court shall have jurisdiction thereof." It is contended by the appellants that this section is intended to apply only to an office involving an election by the people and not to an office involving an election by a city council. In support of this contention it is asserted that, as this section as originally enacted related only to an election by the people, and was subsequently compiled in that chapter of the statute which related to elections, it should now be construed only with reference to its original purpose, and to the context, and be limited in its application to elections by the people.

But the history of this legislation shows that this section, in its inception, was not an amendment of the election statute, but an original act, very properly codified, upon the revision of the statutes, in the chapter relating to elections, under the heading, "Contested Elections." But it should also be observed that the first section, 68, under the heading "Contested Elections," relates to contests in the House of Representatives, which, of course, may involve questions entirely distinct from those of election by the people. Accordingly the context was not intended to confine all the proceedings which might arise under this heading to those of popular elections. Our conclusion therefore is that, while the context is to be considered, and under certain conditions may be entitled to great weight, it is not by any means controlling.

While this statute originally related to elections by the people, it was amended in 1893 so that instead of reading "any person claiming to be elected to any county office," etc., it was made to

read "any person claiming to be elected to any county or municipal office," etc.   As stated by CHIEF JUSTICE SAVAGE, this language is very broad and when given its usual and original meaning includes "any municipal office."   The same scope is given this language in *Curran* v. *Clayton,* 86 Maine, at page 54, in which former C. J. WHITEHOUSE says the act of 1893 "extended the scope of this statute to include a contest for 'any municipal office.'"   While it is true that the intention of the Legislature is the law when that intention can be unequivocally determined, it is equally true that that intention cannot be ascertained by adding to or detracting from the meaning conveyed by the plain, unambiguous language used. Such language is regarded in law as the vehicle best calculated to express the intention of the Legislature.   We discover nothing in the context or the consequences, which furnishes adequate reasons for departing from the rule of literal interpretation.   There is nothing in the literal meaning of the language, or the purpose conveyed by its use, in conflict with the context, or repugnant to a just and beneficent result, nor is the language technical.   In such a case our court have said, *Davis* v. *Randall,* 97 Maine, 36:   "When clear and unequivocal language is used which admits of only one meaning, it is not permissible to interpret what has no need of interpretation."   This language was approved in the opinion of the Justices in the 108th Maine, 545, in answer to question propounded by Governor Plaisted.   It was here further said:   "It has accordingly been distinctly stated from early times even to the present day, that judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity, and are not to alter plain words though the legislature may not have contemplated the consequences of using them."   Endlich On the Interpretation of Statutes, section 4, says:   "When, indeed, the language is not only plain but admits of but one meaning, the task of interpretation can hardly be said to arise.   .   .   .   Such language best declares, without more, the intention of the lawgiver, and is decisive of it.   The legislature must be intended to mean what it has plainly expressed, and consequently there is no room for construction.   It is, therefore, only to the construction of statutes whose terms give rise to ambiguity, or whose grammatical construction is

doubtful that courts can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the lawmakers. Where the words of the statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent. . . . Where by the use of clear and unequivocal language, capable of only one meaning, anything' is enacted by the Legislature, it must be enforced, even though they be absurd or mischievous. If the words go beyond what was probably the intention, the effect must nevertheless be given to them."

The statement that "the plain language is to prevail when not rendered dubious by the context" does not apply in the present case. The Act of 1880, as amended, should not be considered with reference to the other provisions of chapter 6. This was an original act. It did not amend or relate to any other statute. It was entitled: "An Act providing for the Trial of Causes involving the Right of Parties to hold public Office." The fact that it was incorporated by the commissioner on revision in the election chapter gives it no constructive relation to that chapter. It did not amend it. It did not allude to it. It stood alone, and, as amended, stands alone now, so far as the rest of chapter 6 is concerned. *Harlow* v. *Young,* 37 Maine, 88, is a case in point, involving the construction of a statute with reference to the context of the chapter, to whose general provisions it relates and in which it is found. The contention in favor of the construction, with reference to the subject matter of the chapter where found, is fully stated by the court as follows: "It is provided by R. S., c. 6, sec. 62, that 'in no case shall any officer of any city, town or plantation incur any punishment or penalty, or be made to suffer in damages, by reason of his official acts or neglects, unless the same shall be unreasonable, corrupt, or wilfully oppressive.' " . . .

"As these provisions are in the chapter bearing the title, 'Of the Regulation of Elections,' and under the fourth article, entitled 'Penal Provisions and Regulation, affecting the Purity of Elections,' it is now urged, in argument for the plaintiff, that they are limited to such official acts and neglects as are mentioned in that chapter."

This is the precise construction urged, in giving an interpretation to Section 70, R. S., ch. 6. But the court proceeds to say, respect-

ing this contention; "Neither its title, nor the preamble, forms any essential part of an act of the Legislature. The latter has fallen into disuse with us, and the former can never be regarded as a safe expositor of a law which is plain and positive in its provisions. *Mills* v. *Wilkins,* 6 Mod., 62; *United States* v. *Fisher,* 2 Cranch., 386; 1 Kent, 460." Reference is then made to the rule of construction, R. S., 1841, ch. 1, section 3, as to the force which should be given to the title of an act, now R. S., chapter 1, section 6, par. XXVIII, which with the change in the phraseology, reads: "Abstract of Titles and Chapters, and Marginal and Other Notes are not Legal Provisions." The opinion then proceeds as follows: "The terms of the sixty-second section, before quoted, are general, and apply to all cases, and to all the official acts of every officer of every city, town or plantation, in the state; whether his official duties are connected with elections or otherwise. They are not to be restricted by the title of the act; and to avoid a forfeiture they should receive a fair and liberal construction. If standing alone, as a separate enactment, there could be no doubt that they would apply to all cases of official neglects, by the class of officers mentioned; and as they stand now, upon the statute, unrestricted by the title, and unconnected with other sections, they are to be construed in the same manner, and by the same rules, as if they constituted an independent enactment."

The plain meaning of the language in Section 70, "Any municipal office," is strengthened rather than weakened by the context of the Act of 1880 with reference to which alone it is to be construed. Section 73 in the present statute, which comes from the Act of 1880 unchanged, supports this conclusion. This section specifies an office in which the incumbent has papers, records, moneys and property. Such an office is entirely consistent with the municipal office of a treasurer, clerk or assessor of a town or city. In other words we are unable to find any provision in the context of the Act of 1880, as amended in 1893, that is inconsistent with the conclusion that the language of the amendment of 1893 was intended to include any municipal officer whether elected by the people or by the city council.

Moreover, it seems almost a reflection upon the intelligence of the Legislature to assume that it did not know the meaning of the

phrase, "municipal office" and use it advisedly. It is also true that
the municipal officers who administer the affairs of cities, under the
city council, are the real administrative agents of the city, charged
with important and continuous responsibilities, and accordingly, on
account of their great importance would as readily engage the
attention of the Legislature as the board of aldermen or common
council.

Another important rule of construction, to ascertain the evident
intention of the Legislature is, that we may "look at the object in
view, to the remedy to be afforded, and to the mischief intended to
be remedied." Under this rule it would seem not at all improbable
that it was the active intent of the Legislature to apply the proced-
ure prescribed in Section 70 to all elective offices, county and
municipal. Previous to this enactment, the only way in which a
party, claiming to have been elected to an office, could determine
his right was by quo warranto to test the title, and, if successful,
by mandamus to secure the office. This proceeding was so slow,
in accomplishing the purpose of the law, that an annual office
usually expired before the litigation could be terminated. This
delay affected equally a state, county or municipal office. To
obviate the result of this ineffective remedy the Legislature in
1880 enacted the statute, providing that county officers and county
attorneys might proceed as in equity to have their claim to an
office determined; and that an appeal, if taken, including the print-
ing of the record and arguments of counsel on both sides, should
all be accomplished within sixty days; and that, instead of waiting
for the sitting of the Law Court, the case should be certified to the
Chief Justice, and, in the language of the statute, "thereupon the
justices of said court shall consider said cause immediately."

Can there be any doubt in view of the object, remedy, and mis-
chief to be corrected that the Legislature intended by the Act of
1880 to give the claimant of a county office, or the county attorney,
a direct and speedy process to determine his rights? In 1893 this
statute was amended so as to include "any municipal office." With
these same ends in view, the object, the remedy and the mischief to
be corrected, can any reason be assigned why the Legislature should
give an alderman or councilman this speedy remedy and withhold

it from a city collector? Was it the intention of the Legislature to differentiate between these claimants? Is the mischief to be remedied less flagrant in the one case than in the other? Does not every fair and reasonable consideration prevail for the application of the remedy in the one case as strongly as in the other? It no less preserves the popular will. It equally prevents usurpation and fraud. It protects the officer legally elected. It conserves honest elections. It can injure no one. As literally expressed it is also a beneficent law.

Under these rules, so familiar that an apology almost seems due for quoting them, we are unable to discover any principle of construction which authorizes the court to interpret language so plain and certain that it cannot be misunderstood.

But it is not necessary to rest upon the rules of interpretation to reach the conclusion that the court had jurisdiction. Since the enactment of the statute in 1893 our court has twice taken jurisdiction, under the statute, of cases embracing the precise issue presented in the questions before us, the first involving the petition of a city treasurer; the second the petition of a tax collector. *Redington* v. *Bartlett,* 88 Maine, 54, was decided in May 1895, two years after the amendment of Section 70 as it now stands. This was an appeal in equity heard on petition, answer and testimony brought to this court by the defendant, as provided in R. S., Chap. 4, Sec. 55, relating to contested elections. Section 55 is now Section 72, R. S., 1903, under which the present appeal was taken. The opinion was a PER CURIAM containing the entry only, "Appeal Dismissed, Decree below Affirmed." This decision was concurred in by PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WISWELL, J. J. The decree was issued by former CHIEF JUSTICE WHITEHOUSE.

The next case is *Smith* v. *Randlette,* 98 Maine, 86. This was a petition and appeal under these same statutes, the petitioner claiming to have been elected to the office of tax collector of the town of Richmond against the respondent who had been appointed to that office by the selectmen of the town. The court assumed jurisdiction and sustained the bill. In neither of these cases was the question of jurisdiction raised; and, while they may not be regarded as full

precedents for the jurisdiction of the court under this statute, they must, nevertheless, be regarded as carrying a weight of authority little short of a precedent. Inasmuch as jurisdiction lies at the foundation of judicial action it is hardly possible that that question in these cases could have escaped the notice of the eleven judges who considered them, and the eminent counsel who presented them. It may be, however, that the language conferring jurisdiction was so broad, clear and certain that it did not suggest the want of jurisdiction to either court or counsel. In *Curran* v. *Clayton,* 86 Maine, 42, in which this statute was discussed, the court say: "It has been the policy of the legislature of this State to enlarge rather than restrict the admitted power of the court to enquire into the regularity of election."

Under the rules of construction and decisions of the court, we thing the legislative will must be regarded to have been expressed in the plain language of the amendment of 1893. It is accordingly the opinion of the court that the ruling of the Chief Justice in exercising jurisdiction of these cases must be sustained.

The second important objection raised by the appellants is to the finding of the sitting Justice, that Kernan and Combs were primarily entitled to their seats under the action of the common council of March 17, 1913, when the body declared them entitled to seats in the place of Sullivan and Hebert, who held certificates of election.

While the respondents do not seriously question the right of the common council, under the language of the charter, to determine the election of its own members, they however contend: first, "that so much of the charter as allows the common council to be the judge of its own members was repealed by Sections 71, 72 and 73 of Chap. 6, of the Revised Statutes;" and second, that Kernan and Coombs "having once selected their forum, which was the Supreme Judicial Court, had no authority, after submitting and instituting their proceedings in the Supreme Judicial Court, to present a petition to the common council to remove councilmen Sullivan and Hebert."

These contentions are untenable. The Act of 1880, as amended in 1893, did not, by necessary implication, repeal these sections of

the statute. *Curran* v. *Clayton,* 86 Maine, 42. Nor did it confer upon Kernan and Coombs the power, by selecting another tribunal, of depriving the common council of jurisdiction to pass upon the election of its own members.

Section 20 of the city charter provides that each board of the city council shall "judge of the election of its own members." We have no doubt that the common council retained the right to exercise this prerogative conferred by the charter when it acted upon the seating of Kernan and Coombs.

But the crucial question is: Did the common council exercise this prerogative in a legal manner? After a most careful and exhaustive examination of the law, we are constrained to the opinion that it did not.

It will be conceded, first, that this municipal board, acting under the city charter, is constituted a court for the time being, and sitting as a judge upon the election of its own members. Its functions are clearly judicial, and so declared by the great weight of authority. In *Andrews* v. *King,* 77 Maine, at p. 332, it is said, referring to the mayor and aldermen, as a tribunal constituted for the purpose of hearing causes: "In proceedings under the statute, they do not act as municipal officers, nor as agents of the city, but pro tempore, as judges." *Cates* v. *Martin,* 69 N. H., 610; *Meacham* v. *Common Council, etc.,* N. J. Law, 62 Atl., 303; *People* v. *Fornes,* N. Y. Court of Appeals, 67 Atl., 216. This premise, then, may be regarded as settled.

It will be observed, next, that the city charter prescribes no mode of procedure by which the board may be governed in the exercise of its judicial duties. This brings us to the enquiry: Shall it exercise its own absolute will; or shall it be governed by the rules of the common law? If by the former method, it can act arbitrarily without notice or hearing. If by the latter, it cannot so act; but must give to all parties interested, reasonable notice and an opportunity to be heard. This precise question has not been settled in this State, and it now becomes the duty of the court to prescribe a course of procedure that shall, as a general rule, best operate to secure fair and consistent action on the part of municipal boards, and, at the same time, protect the rights of all

parties whose interests are concerned. The natural instinct to so bend the law as to right a specific wrong, has led to the maxim, that "Hard cases make shipwreck of the law." But the rules of law must be general; and, being general, must be applied to all similar cases with uniformity, without modification or variation. Otherwise, no definite result could ever be predicted upon the rules of law.

The case before us presents a hardship. The respondents are holding offices by virtue of votes cast by two councilmen, who were not legally elected, and whose offices were subsequently declared vacant by a judgment of the Supreme Judicial Court. But this specific hardship should not be permitted to influence the judgment of the court against declaring what it deems to be the true rule of law for governing the method of procedure in this class of cases. Proper procedure must precede, and underlies every valid judgment.

We are accordingly of the opinion that, in the absence of statutory provision, the safe and reasonable mode of procedure, required to be observed by municipal boards, when sitting, pro tempore, as judges, should be in accordance with the rules of the common law.

*Andrews* v. *King,* 77 Maine, 224, an exhaustive opinion upon this subject by former Chief Justice Emery, emphatically sustains this doctrine, and is a controlling precedent upon the issue here concerned. It involves the action of municipal officers when acting pro tempore, as judges. The principles of law enunciated specifically relate to the duties of municipal officers, when so acting, as to the legal mode of procedure by them to be pursued, in the absence of statutory direction. In the opinion it is said: "The public and the respondent are entitled to the unbiased judgment of each (mayor and aldermen) after hearing, and as the result of the hearing. It is a part of the "law of the land," that the authority which strikes must hear.

"The proceding before the tribunal should be according to "the law of the land" which is the common law wherever the statute is silent." It is further said: "We think it may be assumed, in the absence of specific directions, that the legislature intended this special tribunal should follow the course so long, and generally

followed by the common law courts, and special courts charged with similar duties. The same reasons for such a court certainly exist."

While in that case the statute required the municipal officers to give a hearing, but not notice, yet the rule of procedure announced required notice as well as hearing, and does not distinguish it from the case at bar, as a judicial interpretation of the statute before us requires, by the common law rule, that the words "notice and hearing" should be read into it. In harmony with the doctrine declared in *Andrews* v. *King* is *Meacham* v. *Common Council of the city of New Brunswick*, N. J. Law, 62 Atl., 303. The common council in this case declared a seat vacant, under a charter similar in import to the one before us. As to the mode of procedure, the court say:

"The action of the common council is claimed to be justified upon the ground that, by the charter of the city of New Brunswick, it is provided in Sec. 26 'that the common council shall be the sole judge of the election, returns and qualifications of its own members.' The common council, by the section above quoted, is made a judge and it must exercise its judgment and not its arbitrary will upon these matters, and that judgment is subject to the regularly organized judicial tribunals."

It has been held by some courts that the power conferred by the Legislature upon municipal bodies to determine the election of their own members was analagous to the power conferred by the Constitution upon the Legislature to determine the election of the members of that body; but the great weight of authority is the other way, and seems to be based upon the sound reason that the Legislature is an independent, co-ordinate branch of the government. and supreme within its sphere of action.

In *Meacham* v. *Common Council*, supra; upon this point, it is said: "The provisions in the state and federal constitutions that each house of the legislative bodies shall be the judge of the election, returns, and qualification of its own members, stands upon quite a different footing from the like provisions in the charter of the defendant. The federal and state legislatures are creatures of the federal and state and constitution, and constitute one of the three branches of government provided for by those instruments, which

also contain distinct provision against interference by each branch with the other."

In *People* v. *Fornes*, N. Y. Ct. of Appeals, 67 N. E., 210, it is said: "Under this authority, each house of Congress and each branch of the state legislature has exercised the most plenary power to determine who had been elected members of the body. Indeed, it has been generally assumed by publicists and writers on constitutional law that the absolute right of determining the election of its own members is a power necessary to the independence of the legislative branches of the government."

Then, comparing the power of the Legislature with that of a municipal body, it is further said: "There is this distinction between the two: the action and determination of a house of the legislature is final, while that of a municipal assembly or chamber is subject to review by the court, even without expressed declaration to that effect, unless it has been enacted in the charter to the contrary."

It is accordingly plain that no such scope can be accorded a municipal body, authorized to determine the election of its own members, as is delegated to the Legislature by the Constitution, under similar authority.

Upon both authority and reason, we are unable to avoid the conclusion that a municipal body, acting for the time being as a judge, must be required to conform its procedure to the rules of common law, where the statute is silent. It is unnecessary to cite authorities, upon what the common law requires. The very foundation of judicial proceedings under the common law is reasonable notice and opportunity to be fully heard. In *Andrews* v. *King*, supra, although the statute was silent upon notice and provided only for a hearing, it is said: "The incumbent should have reasonable notice of the charges, as formulated, and of the time and place of the hearing. At the hearing, he should be allowed to cross-examine the witnesses against him, within the rules of evidence. His own testimony and that of the witnesses for the defence should be fully heard within the same rules. The hearing should be full and fair, and by a patient unprejudiced tribunal. The proceeding is adversary or judicial in its character, and where the statute is silent,

the substantial principles of the common law must be observed. Dillon on Mun. Corp. (3rd ed.) 253; *Murdock* v. *Phillips Academy*, 7 Pick., 303; 12 Pick., 244."

In that case the board was not permitted to give a hearing simply, nor act upon inadequate notice, but upon "reasonable notice."

A judicial proceeding implies a trial. A trial cannot be had, under the common law, without notice and hearing. Sullivan and Hebert had neither notice nor hearing. Neither of them had an opportunity to be heard. They were unseated by resolution only. The sitting Justice states the proceeding thus: "Thereupon the common council by resolution reciting the proceedings before the Justice of the Supreme Judicial Court, and his decision, unseated Sullivan and Hebert, and seated Kernan and Coombs.

But the prior hearing before the single Justice, under an independent statutory proceeding, and his decision therein, could not be substituted for the hearing before the board itself under the municipal charter. Its weight and effect upon the judgment of the members of the board, provided a legal hearing had been given to the respondents, might and doubtless would have been great. That would have been a matter within their discretion, but one judicial tribunal cannot simply adopt the decision of another and omit the essential formalities to protect the rights of the respondent which the law obliges it to take. Nor can the judgment of the court subsequently rendered, on appeal from the sitting Justice, affirming his decision as to Kernan and Coombs, relate back and take effect as of the date of his decision. The appeal vacated the decision below. *Bartlette* v. *McIntire*, 108 Maine, 161. It accordingly follows that Kernan and Coombs were not entitled to their seats, until the final judgment of the court was announced, some little time after April 4, when the respondents were elected to the respective offices which they now claim. It is conceded that the votes of Sullivan and Hebert were necessary to the election of the respondents. But while their seats were later declared vacant, they were on April 4, when the election took place, each holding a certificate of election from the proper returning board, which made them prima facie members, Dillon on Mun. Corp., sec. 892, Meacham on Public Officers, Sec. 328, and, if not properly removed by the action of the city council on March 17, de facto members of that body.

This brings us to the further question: Can the respondents retain the benefit of the de facto act of these two councilmen? We are concerned only with the legal question presented. It is not within our province or power to legislate. We must accordingly pass upon the law, and not the merits, of the case. By the law this issue must be solved in favor of the respondent. The two councilmen in question held certificates of election. While those certificates had life, they had a legal right to participate in the action of the common council. The judgment of the sitting Justice in the proceedings of Kernan and Coombs against them, as already seen, did not invalidate their certificates. Consequently, Sullivan and Hebert, on April 4, were prima facie members of the common council and were entitled to act upon all matters regularly presented. The election of city officers of whom the respondents were two, was legally presented and could be legally acted on by Sullivan and Hebert. But, in view of the subsequent action of the court in unseating them, were their acts binding? Upon this question it should be observed that the attack upon their right to act, under the present proceeding, is collateral. This form of attack cannot be sustained. The court has repeatedly held in this State that a de facto act cannot be assailed collaterally. In *Stuart* v. *Inhabitants of Ellsworth,* 105 Maine, 523, the court say: "They were de facto officers and in controversies to which they are not parties their title to their offices and their acts therein cannot be questioned." In *Hooper* v. *Goodwin,* 48 Maine, 79, it is said upon this same point: "His right can only be questioned in a suit against him." See also cases cited in *Stuart* v. *Ellsworth,* supra, on page 527.

In addition to the authorities holding that de facto acts cannot be collaterally attacked, which are conclusive upon the present issue, is found a case directly in point in *The People* v. *Stevens,* Hill's Reports, Vol. V., 616. On page 631 it is said: "Having this color of title, he went into the common council and voted on the balloting for a clerk, and if it be conceded that he was not alderman de jure, still his vote was not an absolute nullity. If that vote had turned the election in favor of the defendant, there can be little doubt that he would be entitled to hold the office of clerk,

although Osborne himself should afterwards be ousted by quo warranto."

Upon the law as well established our conclusion is, that the proceeding of the common council in unseating Sullivan and Hebert, upon resolution, without notice or hearing, was contrary to the course of common law procedure, and consequently illegal; that, being de facto officers on April 4, when they cast their votes for the respondents, their action was valid in law; and, consequently, that the appellants, George A. Murphy, George Z. Bernier and George A. Welch, were legally elected and are entitled to retain their respective offices.

*Appeal sustained without costs.*