## Mutters v. Allen et al.

Dec. 8, 1943.

114

Reid Prewitt and F. C. Bryan for appellant.

B. S. Grannis for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON— Affirming.

This appeal is from a judgment dismissing the petition in a contest of a local option election held on Monday, June 7, 1943.

The petition alleged that the election commissioners certified the vote to be 422 to 258 in favor of local option, a majority of 164. It was alleged that a large number of the dry votes were illegal but it was later stipulated that forty of the dry votes and 27 of the wet votes were illegal so that when such votes were deducted there was a majority of 151 in favor of local option.

The only other ground of contest involved the action of the county clerk in closing the registration books. The facts involved in this ground were stipulated, in substance, as follows: At the Morehead Teachers College there were some 400 sailor trainees. With the exception of twenty-five or thirty officers more or less permanently assigned to the school, the trainees would stay approximately sixteen weeks. Eight of those sailors applied for registration and were permitted to register and vote. The county clerk, being in doubt as to the right of the trainees to vote, closed the registration books as to them at 3:00 P. M. on Saturday before the election. Having received an opinion of the Attorney General that such trainees as were duly qualified voters might register and vote, the clerk opened the book to registration at 9:00 A. M. on the morning of the election. The Commandant of the cadet unit at the school was notified and

he, in turn, notified the members of the cadet unit and gave them permission to be relieved of duty for the purpose of registering and voting.

It does not appear that any of the cadets were residents of Rowan county or legal voters of the county, but the appellant would have us assume that the mere closing of the registration books slightly earlier than the usual hour on Saturday afternoon and the failure to open them until 9:00 A. M. on Monday morning, the day of election, prevented the election from being free and equal within the meaning of section 6 of the Constitution. The contention is so purely speculative, fanciful and imaginary as hardly to call for discussion or answer. If any of the cadets who did not vote were eligible to register, and if any thus eligible were prevented from registering by the closing of the books, then the action of the Commandant in notifying them that they would be permitted to register and vote effectively repaired any supposed damage that might have been done by the brief closing of the books. In the absence of any showing that a sufficient number of eligible voters to have changed the result of the election were prevented from registering and voting we would clearly be unjustified in setting aside the election. This conclusion is in accord with the principles enunciatel in Wallbrecht v. Ingram, 164 Ky. 463, 175 S. W. 1022. There must at least be some showing that a sufficient number of legal voters to have affected the result of the election were prevented from voting. Here, there was no such showing and nothing even to indicate that such was the case.

The judgment is affirmed and mandate will issue forthwith, without prejudice to the appellant's right to file a petition for rehearing.