## Johnson et al. v. May et al.

June 20, 1947.

John J. Winn, Judge.

Lewis A. White and Howard C. Hadden for appellants.

J. A. Richards and Roger A. Byron for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Reversing.

This appeal involves the contest of a local option election held in and for Montgomery County on September 21, 1946. In this election 3,634 votes were cast and counted, and the result was a 454 vote majority in favor of adopting prohibition. A suit was filed by several citizens and residents of the County asking a judgment that either: (1) the majority of legal votes cast were against prohibition, or (2) the election was illegal and void. The lower Court sustained special and general demurrers to certain paragraphs of appellants' "Paragraphed Petition in Equity," and a substantial amount of proof was heard on other issues raised in the case. The Court entered a final judgment dismissing appellants' petition, and they have appealed.

A number of questions have been raised on this appeal, but only one of them has sufficient merit to require reversal.

In Paragraph XVI of the petition appellants alleged that the Montgomery County Board of Election Commissioners illegally purged from the registration books the names of 885 registered voters just prior to the election. This pleading sets out as the basis for such illegality the failure of the Board to comply with Chapter 117, Kentucky Revised Statutes, with respect to the time of meeting, failure to give required notice to the purged voters, improper marking of the registration records, and other grounds. The further allegation is made in Paragraph XIX of this petition that because of the above facts, the election was not fair and equal as guaranteed by Section 6 of the Kentucky Constitution. No allegation is made that: (1) any of the appellants was deprived of his right to vote as a result of this purgation, or (2) if the 885 voters had been permitted to vote, the result of the election would be changed.

The lower Court sustained a special and a general demurrer to this paragraph, apparently because of the lack of allegations (1) and (2) above. In our opinion this was error.

Section 6 of the Kentucky Constitution provides that "all elections shall be free and equal." We have consistently held that under this Section an election is not free and equal if a substantial number or percentage of qualified electors are deprived of their right to vote. One of the early cases on this point is Early v. Rains, 121 Ky. 439, 89 S. W. 289. It involved a local option election in Corbin, Kentucky. Contrary to the provisions of Section 1495, Ky. Stats. 1903, a special registration was not held prior to the election. It was decided that the failure to provide for a special registration disqualified or denied suffrage to a number of legally qualified voters, and therefore the election was invalid. In passing on the question of whether or not the result of the election would have been different if those deprived of the right to vote had voted, the Court stated, at page 451 of 121 Ky., at page 292 of 89 S. W.:

"The Constitution and statutes provide for an election—not a trial in court—to settle this question. The election must be by secret ballot, not by forcing the electors to disclose how they voted, nor how they intended to vote. The election, if legally called for, must be held.

Our concern is not primarily what the result was or might have been, but whether an election was held at all. * * *

"Unless judgments of courts and boards are to be substituted for elections, the trial of a question like this is confined to determining whether there has been a substantial compliance with the law in the conduct of the election, and, if there has not been, to remand the question to the people concerned, where their will may be fairly and legally recorded."

The principle announced in the Rains case was restated, although its application was restricted, in Wallbrecht, et al., v. Ingram, et al., 164 Ky. 463, 175 S. W. 1022. This suit involved a local option election, wherein it appeared that 448 voters were denied the right to vote because of a shortage of ballots. A majority of 558 votes favored prohibition. The Court stated, at page 473 of 164 Ky., at page 1026 of 175 S. W.:

"The question then is: Was the election a free and equal one, within the meaning of the Constitution (section 6), and, if it was not, what should be declared to be the result? Strictly speaking, a free and equal election is an election at which every person entitled to vote may do so if he desires, although, in dealing with the practical aspect of elections, it could hardly be said that, if only a few were prevented from voting, the election would not be free and equal, in the constitutional sense. The very purpose of elections is to obtain a full, fair, and free expression of the popular will upon the matter, whatever it may be, submitted to the people for their approval or rejection; and when any substantial number of legal voters are, from any cause, denied the right to vote, the election is not free and equal, in the meaning of the Constitution.

"Nor do we think it material whether the cause that prevented persons legally entitled to vote from exercising the right of suffrage was due to some imperfection or insufficiency in the statute regulating the conduct of elections or to fraud, intimidation, violence, bribery, or other wrongdoing that prevented a full and free expression of the will of the people. The constitutional provision is mandatory. It applies to all elections, and

no election can be free and equal, within its meaning, if any substantial number of persons entitled to vote are denied the right to do so. It would not be competent for the Legislature of the state to purposely pass a law, to prevent or interfere in any manner with the right to hold a free and equal election as we have defined it; nor would honesty of purpose in the enactment of a law intended to permit free and equal elections save it from condemnation, if in its practical application it prevented a free and equal election. In short, this constitutional provision admits of no evasions or exceptions. No amount of good intention or good faith can be allowed to defeat its purpose or its meaning. When the question arises, the single inquiry will be: Was the election free and equal, in the sense that no substantial number of persons entitled to vote and who offered to vote were denied the privilege?"

The Court decided that the election was not free and equal, but further decided against invalidating it because the result would not have been affected if all of those deprived of the right to vote had voted against prohibition. Where the result might be otherwise, the following rule was laid down, at page 477 of 164 Ky., at page 1028 of 175 S. W.:

"To restate the rule adopted by this court, it is this: If the number of voters that were prevented from voting by fraud, bribery, violence, mistake of the election officers, or imperfection in the law would be sufficient to change the result if they had been cast for the minority, then the election should be set aside upon the ground that it could not be determined with certainty that the result, as certified to by the canvassing board, represented the will of the majority. A like conclusion should be reached if the bribery, fraud, intimidation, or other cause, whatever it may be, has affected the election to such an extent that it cannot be determined, by any reasonable method, for which side a majority of the legal votes were cast."

This decision was followed and an election held invalid on the basis of the rule above quoted in Lakes v. Estridge, 294 Ky. 655, 172 S. W. 2d 454. The decision was cited with approval in Mutters v. Allen et al., 296 Ky. 113, 176 S. W. 2d 255, wherein we pointed out, at

page 115 of 296 Ky., at page 256 of 176 S. W. 2d, that the vital question to be determined is whether or not "a sufficient number of legal voters to have affected the result of the election were prevented from voting."

Using the yardstick of the Wallbrecht case, and referring again to the number of votes cast in this election (3,634) and the numerical majority of those in favor of prohibition (454), it is immediately apparent that 885 votes is substantial, and if counted against prohibition would be amply sufficient to overcome the "dry" majority.

Assuming appellants' allegations to be true, a free and fair election was not held in Montgomery County. It is not necessary to allege facts which could not be proved concerning the outcome of the election. Nor should the lower Court or this Court undertake to decide the will of the people by speculating how qualified electors would have voted had they been given the opportunity to do so. Since the Constitution calls for a free and fair election and since appellants alleged that they were being deprived of valuable rights because such election was not held, they stated a good cause of action in Paragraph XVI of their petition. By sustaining demurrers to that paragraph, the lower Court committed prejudicial error.

A further question has been raised by appellants with respect to the action of the Court in sustaining special and general demurrers to Paragraph XVII of the petition, which alleged the unconstitutionality of the purgation statute (Chapter 117, Kentucky Revised Statutes). Since appellants have failed to present in their brief any grounds upon which such statute is unconstitutional, we do not deem it necessary to pass upon this question.

Another question involves the action of the lower Court in overruling a motion by appellants to be permitted to inspect the contents of the ballot boxes. The object of this motion was to enable appellants to obtain the names of voters, which might be used to substantiate the allegations in Paragraphs VI and VII to the effect that a number of unknown voters were not qualified or had voted openly. In the above-mentioned paragraphs appellants had given the names of some voters and had

stated that in each precinct there were a number of voters (ranging from 15 to 35) "whose names are not now known to plaintiffs." This motion was not made until after the thirty-day period in which a contest action could be filed under Section 122.070, Kentucky Revised Statutes. At that time it was too late for appellants to add additional names.

It is the established rule in this State that where the casting of ineligible votes constitutes a ground of contest, the pleader must name in his pleading those persons whose votes he questions. Hogg v. Caudill, 254 Ky. 409, 412, 71 S. W. 2d 1020; Jackson et al. v. Bolt, 292 Ky. 503, 508, 166 S. W. 2d 831. After the expiration of the thirty-day contest period, appellants could not have added additional names by amended petition or otherwise, as this would be setting up a new ground of contest. Widick et al. v. Ralston, 303 Ky. 373, 387, 197 S. W. 2d 261, 198 S. W. 2d 56. The decision in Hodges v. Murray, 240 Ky. 127, 41 S. W. 2d 923, is hereby overruled in so far as it is inconsistent with the rule above stated. Since an examination of the contents of the ballot boxes would have been of no avail to appellants, the Court properly overruled the motion to examine same.

For the reasons hereinabove set forth, the judgment is reversed and the cause remanded for further proceedings consistent herewith.