## Heavrin v. Brown et al.

October 28, 1949.

Rehearing denied January 24, 1950.

Hottell, Stephenson & Allen and J. E. Wise for appellant.

James W. Watts and Joseph E. Stopher for appellees.

JUDGE REES—Affirming.

A local option election was held in Guston Precinct of Meade County on April 30, 1949. The Meade County Board of Election Commissioners certified that 161 votes were cast in favor of the sale of alcoholic beverages in the precinct and 170 votes were cast in the negative. Lambert Heavrin, a qualified voter of Guston Precinct, brought this action contesting the election on the grounds (1) that various specifically named voters had voted in the local option election illegally for the reason that they either had not resided in Meade County six months or in Guston Precinct sixty days preceding the election; and (2) that five named legal voters in Guston Precinct were prevented by the election officers from voting in the election. The court found that four of the challenged voters had not resided in the county or precinct the required length of time, were illegal voters, and had voted dry. These votes were deducted from the dry vote, thus reducing the dry majority to five votes. The court adjudged that a majority of the legal votes had been cast in favor of prohibiting the sale of alcoholic beverages in the precinct, and the plaintiff's petition was dismissed.

It is argued on this appeal that the court erred in refusing to find that twelve named voters were residents of Big Spring Precinct, and that they voted illegally in Guston Precinct. Eight of these voters cast "Yes" votes and four of them cast "No" votes. If their votes are deducted, the majority in favor of prohibition will be reduced to one vote. It is then argued that the court erred in not finding Virgil Neff, A. T. Hinton and Mrs. A. T. Hinton were legally qualified voters in Guston Precinct who were prevented from casting their ballots by act of the election officers, and in not declaring the election invalid since, if counted against the drys, these votes would have changed the result. The correctness of the court's decision as to the twelve votes which appellant claims were cast by residents of Big Spring Precinct depends upon the location of the boundary line be-

tween Big Spring Precinct and Guston Precinct. It was stipulated that the dividing line between the two precincts is the following part of the description of Guston Precinct as it appears in the records of the County Clerk of Meade County: "Beginning at Tom Wilson's, including him; thence to Wilbur Shumate including him; thence to John Shacklett's including him; thence to Fred Foushee's including him; thence to the beginning and including all legal voters within said boundary."

It appears that if straight lines are drawn from Wilson's home to Shumate's home, thence to Shacklett's home and thence to Foushee's home the twelve voters named in the evidence, eight of whom voted dry and four of whom voted wet, reside in Big Spring Precinct, but if the dividing line is along the outer edges of the Wilson, Shumate, Shacklett and Foushee farms then these twelve voters reside in Guston Precinct and the court properly refused to eliminate their votes. The dividing line was established in 1921, and since that time the twelve persons whose votes are questioned and those who resided where these voters now reside have voted in Guston Precinct. We think that the county court order of 1921 properly construed does not fix straight lines connecting the homes of persons named in the order, but that it was the purpose of the order to include the farms of the persons named. It has been so construed since 1921 by all parties interested, including the voters and election officials. We adopt the following from the chancellor's opinion: "There is a sharp conflict in the testimony as to the location of the line or lines dividing the Guston and the Big Spring precincts, the testimony indicating that these lines could be so drawn from the court order as to exclude, or so as to include, a number who voted in the election. But the weight of the evidence is that they have been so construed and considered for many years as to include them, and those who have previously resided at the same places, in the Guston precinct. And where a contemporaneous construction was put upon the court order and the location of the lines, which seems to have been uniformly adhered to by those who have resided at the places in question and by the county and election authorities, apparently without question, since the order was entered in 1921, the court will adhere to that construction, especially where the proof seems to sustain it.

Otherwise, much confusion might well arise in many other instances and places, resulting in disfranchisement of voters through no fault of their own. This is not holding that a voter may make any precinct in which he chooses to vote his legal voting place, but is holding that these voters actually reside in the Guston precinct.''

Appellant claims that five voters, Claude Newton, Nina Newton, Virgil Neff, A. T. Hinton and Mrs. A. T. Hinton were legally qualified to vote in the election but were prevented from doing so by the election officers, and that their votes should be considered as cast in favor of the sale of alcoholic beverages, thus bringing the case within the rule announced in Johnson v. May, 305 Ky. 292, 203 S. W. 2d 37, and similar cases. That rule, in substance, is that if voters who were illegally prevented from voting were sufficient in number to change the result if they had cast their votes for the minority, then the election should be set aside upon the ground that it cannot be determined with certainty that the result as certified by the canvassing board represents the will of the majority. This rule has no application here, since we have concluded that at least two of the five persons who were prevented from voting were not legally qualified voters and the chancellor properly so held. These two persons were A. T. Hinton and his wife who lived in Jefferson County until December 11, 1948, when they moved to a farm in Guston Precinct in Meade County. A. T. Hinton began working on the farm on October 10, 1948, but there is no evidence that he lived in Meade County or established a residence there until December 11, 1948, which was less than six months prior to the election. Furthermore, it appears that Mrs. Hinton did not present herself at the polls and offer to vote. It is unnecessary to consider the right of Claude Newton, Nina Newton and Virgil Neff to vote, since by considering their votes cast for the minority the result of the election would not be changed.

Mooleyville Precinct in Breckinridge County adjoins Guston Precinct in Meade County. Mr. and Mrs. W. S. Kessinger own a farm located partly in Guston Precinct. Their home is located in Guston Precinct in Meade County. They formerly lived in Breckinridge

County and voted in Mooleyville Precinct. They moved to Meade County four years ago, but continued to vote in Mooleyville Precinct until 1949 when they registered in Meade County and voted in Guston Precinct in the local option election. It is argued that their votes were illegal, but the fact that they voted illegally in Breckinridge County did not prevent them from registering in Meade County and voting in the precinct of their residence.

The judgment is affirmed.