Clark GROSS et al., Appellants,

v.

J. I. WEST et al., Appellees.

Court of Appeals of Kentucky.

June 24, 1955.

As Extended on Denial of Rehearing
Nov. 18, 1955.

A. E. Funk, Jr., Middlesboro, for appellants.

H. Kelly Clore, Pineville, for appellees.

MONTGOMERY, Judge.

This is an appeal from a judgment dismissing the action of the appellants contesting the result of a local option election held in the fifteen precincts of Middlesboro, Bell County, Kentucky, on September 21, 1954. The question presented to the voters was: "Are you in favor of the sale of alcoholic beverages in the city of Middlesboro, Kentucky?" The voters could vote "yes" or "no". The certified returns as canvassed by the election commissioners showed 2,104 "no" votes and 1,869 "yes" votes, a majority of 235 of "no" votes.

The action was brought against the election commissioners by three citizens who were qualified voters and who had voted in the election. Three unofficial citizens aligned with the "dry" element in the city were permitted to intervene in the action on the side of the defendants.

The basis of the action was the alleged illegal purgation immediately before the holding of the election of 2,182 registered voters in the precincts involved. Appellants contended that such action on the part of the Registration and Purgation Board deprived a substantial number of voters of the right to vote and thus violated Section 6 of the Kentucky Constitution providing for free and equal elections. Appellees denied the allegations of the complaint and asked that it be dismissed for failure to state a claim for relief.

Proof by deposition was taken by both sides. At the conclusion of the taking of proof by appellants (plaintiffs), a motion was filed by appellees, which was treated as a motion to dismiss under CR 41.02. This motion was not passed upon until after appellees' proof had been taken.

Upon submission, the Chancellor made his findings of fact and conclusions of law. He concluded that appellants had failed to sustain a cause of action by their proof, in that there was a failure to show that "any individual whose registration was illegally purged complained or attempted to vote, or was entitled to vote by qualifications other than the fact of registration." The motion to dismiss was sustained. Judgment was rendered, dismissing the contest and declaring the election valid.

Two questions are presented by the appeal: (1) Does the illegal purging of 2,182 registered voters immediately preceding the election violate Section 6 of the Kentucky Constitution? (2) Are the contestants of an election required to prove that legally registered voters who were illegally purged were actually qualified voters on election day in order to sustain a contest action?

The questions are interrelated and will be considered together. The issue is whether any qualified or eligible voters were denied the right to vote by reason of the illegal purgation, and if so, was the number of such voters sufficient to prevent the contested election from being free and equal within the meaning of the Constitution. The determining factor is not whether the voter was illegally purged but whether he was a qualified voter and as such was denied the right to vote.

The complaint alleges that the election was not free and equal due to "the illegal transferring of *voters* and the illegal pur-

gation of *registered voters"* (our emphasis). It contains no allegation that any qualified or eligible voter was denied the right to vote.

Counsel for appellants refers to the findings of fact made by the Chancellor as being correct and unquestioned by either party. He found as facts that a list of 2,182 names was compiled by the Board to be purged, notice of purgation was mailed to each of them, and 1,711 of the notices were returned undelivered. For reasons unnecessary to enumerate here, they being uncontested, the Chancellor concluded as a matter of law that the names of at least 1,711 voters were not purged according to law. The names of 261 persons were purged as being dead.

He also found that some response was had from unnumbered individuals whose notices were presumably received and that the precinct voting lists were compiled from the corrected list of registration with the new registrants added. The registration books remained open until September 5 before the election. There was confusion on election day in twelve of the fifteen precincts due to persons wishing to vote who were not in the precinct voting register. These people were advised to go to other named precincts on the possibility that their names would be included there. Two unnamed individuals were heard to complain that they were unable to vote. The highest estimate of would-be voters directed elsewhere was 175, the lowest 46. The Chancellor found the testimony as to number to be extremely hazy. He concluded as a matter of law that no proof was offered that any individual whose registration was illegally purged complained or attempted to vote or was entitled to vote by qualifications other than the fact of registration.

In Wallbrecht v. Ingram, 164 Ky. 463, 175 S.W. 1022, a free and equal election within the meaning of the Constitution was defined as an election at which every person entitled to vote might do so if he desired. It was further defined as being one in which no substantial number of legal voters were from any cause denied the right to vote.

The constitutional provision was held to apply to all elections and to be mandatory.

The Wallbrecht case was approved in Mutters v. Allen, 296 Ky. 113, 176 S.W.2d 255, holding that the election would not be set aside upon a failure to show that a number of eligible voters sufficient to have changed the election results were prevented from registering and voting.

■ One who, from any cause, cannot present himself at the polls is not necessarily one who, from any cause, is denied the right to vote. The absence from the polls may be occasioned by military or other duties, failure to register timely or properly, or other causes. Karloftis v. Helton, 297 Ky. 463, 178 S.W.2d 959, certiorari denied, 322 U.S. 713, 64 S.Ct. 1269, 88 L.Ed. 1555; Cantrell v. Adams, 298 Ky. 845, 183 S.W.2d 492.

■ It was also held in the Karloftis case that the contestants in a local option election contest must allege and prove that any person opposed to prohibition was prevented from casting his secret vote by reason of the wrongful act of those in favor of prohibition in order to show that the election was not free and equal. It is the established rule that where the casting of ineligible votes constitutes a ground of contest, the pleader must name in his pleading those persons whose votes he questions. Widick v. Ralston, 303 Ky. 373, 197 S.W.2d 261, 198 S.W.2d 56; Johnson v. May, 305 Ky. 292, 203 S.W.2d 37. One attacking the qualifications of a voter has the burden of proof. Combs v. Brewer, 169 Ky. 571, 184 S.W. 892. There is no reason perceived why this rule should not apply where eligible voters may have been denied wrongfully the right to vote. It would be a strange rule to hold that one alleging a disqualification of a voter must bear the burden of proof and then hold that one alleging a voter's qualifications does not have the same burden. In each case, the information determining qualification or disqualification would more likely be within the knowledge of the party seeking affirmative relief.

On the second appeal in Johnson v. May, 307 Ky. 399, 211 S.W.2d 135, 137, it was said:

"In order to sustain the contest, it must appear that those legally entitled to vote had been wrongfully deprived of that right. The mere fact that their names had been improperly purged from the registration lists does not settle the issue. Registration is simply one qualification. Under section 145 of the Constitution, additional qualifications are residence within the state, county and precinct. An obvious and important qualification is that the proposed voter must be alive and able to vote."

▆▆▆ To defeat the results of a local option election on the ground that it was not free and equal within the constitutional meaning, the contestants must allege and prove that a substantial number of eligible, legal, or qualified voters were wrongfully denied the right to vote through no fault or cause of their own. Appellants failed to allege or prove a proper cause of action.

▆▆▆ In order to shift the burden of proof to the contestees, appellants contend that proof of registration carries with it a presumption that such a person is entitled to vote on election day if registered and that it was incumbent upon appellees as a matter of defense to show that the illegally purged voters were not qualified voters on September 21, 1954, the election date. Improper purgation of the registration lists does not settle the issue of free and equal election since registration is only one qualification of the legal voter. Taylor v. Betts, 141 Ky. 138, 132 S.W. 162; Johnson v. May, supra. The fact that 1,711 of the purgation notices were returned undelivered would seem to raise a presumption that this number of voters whose names were purged were disqualified either by reason of death, absence, or nonresidence. The qualified voter must be alive, have resided within the precinct, county, and state the required period of time, be of proper age, and be free from conviction of a felony. These and other factors determine whether the voter is qualified to vote on election day and may or may not have been present at the time of registration.

▆▆▆ The general rule as to burden of proof is to be applied in election contest cases. Bates v. Crumbaugh, 114 Ky. 447, 71 S.W. 75, 24 Ky.Law Rep. 1205. CR 43.01 incorporates Civil Code sections 525 and 526 and places the burden of proof on the party holding the affirmative and who would be defeated if no evidence were given on either side. Obviously, appellants would have lost if no proof had been introduced. Warfield Natural Gas Co. v. Wright, 233 Ky. 378, 25 S.W.2d 1036; Colovos' Adm'r v. Gouvas, 269 Ky. 752, 108 S.W.2d 820, 113 A.L.R. 871.

▆▆▆ Since the Chancellor did not rule on the motion to dismiss under CR 41.02 until all proof was taken and adjudged the election to be valid, the judgment is considered as one upon the merits. While the findings of fact make no reference to appellees' proof, it was there shown that despite 1,711 names illegally purged there were 1,156 registrants added, and that the total vote of 3,973 cast in the contested election was substantially the same in total number as in another local option election, 4,025, and in a general election, 3,901, both in 1953, and as in the general election, 3,998, in 1954; thus indicating that only a small number of qualified voters, if any, were denied the right to vote.

▆▆▆ It is the policy of the law to sustain elections where proof is doubtful. Drennan v. Roberts, 234 Ky. 574, 28 S.W.2d 735. If it can reasonably be done, the court should uphold the validity of an election. Hendrickson v. Coign, 304 Ky. 383, 200 S.W.2d 905. To sustain the contention of appellants and place the burden of proof upon the appellees, the court would be doing violence to the policy of the law.

We find that no federal question is involved.

The Chancellor was correct in his judgment, and it is affirmed.