**496**

**Dr. Carroll L. WITTEN et al., Petitioners,**

v.

**Honorable Marvin J. STERNBERG, Judge, Jefferson Circuit Court, Chancery Branch, Second Division, Respondent.**

Court of Appeals of Kentucky.

Dec. 17, 1971.

J. Bruce Miller and Thomas C. Carroll, William B. Stansbury, C. W. Grafton, Grafton, Ferguson, Fleischer & Harper, Louisville, for petitioners.

Cecil Davenport, Joseph R. Wilson, Louisville, for respondent.

CULLEN, Commissioner.

At the recent regular November election the count of the votes for those nominated for the office of alderman of the second ward in Louisville showed the Democratic candidate, Dr. Carroll Witten, to be the winner, with 39,242 votes, over the Republican candidate, Frank A. Matthews, Jr., with 29,721 votes, and the American Party candidate, Tom Nolan, with 874 votes. C. J. Hyde, who had not been nominated for the office and whose name therefore was not carried on the voting machines, received 4,600 write-in votes. Two persons alleging themselves to be co-chairmen of the "Hyde for Alderman Committee" and a third person alleging herself to be a voter, taxpayer and citizen of Louisville brought suit in the Jefferson Circuit Court, against Witten, the county board of election commissioners, and the county court clerk, seeking an injunction against certification of Witten as the winner, and a declaration that the election for the office in question was void, on allegations that such irregularities occurred with respect to the provision of facilities for write-in votes, the adjustment of the voting machines, and the counting of write-in votes as to disfranchise a substantial number of voters and thus to violate the requirement of Section 6 of the Kentucky Constitution for free and equal elections and to make the purported election for the office in question no election at all. A restraining order was issued, which still remains in force pending a ruling by the circuit court on the defendants' motion to dissolve it, and the plaintiffs' motion for a temporary injunction. Subsequently the Republican candidate intervened, asking substantially the same relief as was sought by the original plaintiffs.

Simultaneously with the filing of their motion to dissolve the restraining order, the defendants moved to dismiss the action for lack of jurisdiction of the subject matter. After the Republican candidate intervened, the defendants renewed the motion to dismiss. The circuit court overruled the motion. The defendants thereupon instituted the instant original proceeding in this court, seeking an order prohibiting the circuit court from entertaining the action, by reason of lack of jurisdiction.

Under Section 153 of the Kentucky Constitution the General Assembly is given power to provide "for the trial of contested elections." As to elections for members of city legislative bodies the General Assembly has chosen to provide that the body shall determine the election of its members. The statute so providing for first-class cities (Louisville) is KRS 83.060. The statutes for the other classes of cities are, respectively, KRS 84.060, 85.070, 86.060, 87.-040, and 88.050. This type of statute has been held constitutional. Jackson v. Randolph, Ky., 311 S.W.2d 541.

The general election contest statute, KRS 122.070, expressly excludes from its scope city offices "as to which there are other provisions made by law for determining contested elections," having reference to the offices of city legislative bodies. Cf. Thieman v. Hancock, 296 Ky. 223, 176 S.W.2d 418.

▆▆▆ Under KRS 83.060, considered with KRS 122.070, it is plain that the board of aldermen of Louisville is the sole judge of the election of its members (where the offices of less than a majority of the board are in question, Scholl v. Bell, 125 Ky. 750, 102 S.W. 248), and contests of elections for such office are excluded from the jurisdiction of the courts. See Cole v. Ridings, 271 Ky. 158, 111 S.W.2d 605; Lyttle v. Wilson, 252 Ky. 392, 67 S.W.2d 498; Ratleff v. Tackett, 209 Ky. 588, 273 S.W. 441; Craft v. Davidson, 189 Ky. 378, 224 S.W. 1082; Jackson v. Randolph, Ky., 311 S.W.2d 541. The plaintiffs in the action below maintain,

however, that their action is not one to contest the election, but rather is one to obtain a declaration that there was in fact no election for the office in question. They cite no authority for such a distinction, as respects an election for the office of member of a city legislative body, and we believe there is none. There plainly was enough of an election to produce a putative winner in Witten, and the objective of the action below was a determination that Witten was not the winner, for whatever reason. The mere fact that the plaintiffs do not seek the office for themselves or for the candidate they espouse, but ask only that the election be declared void, does not keep the proceeding from being in the category of an election contest, because a suit attacking an election, by a defeated candidate who did not receive a plurality of the legal votes, has always been considered a contest suit even though the only relief the plaintiff can obtain is to have the election declared void. School v. Bell, 125 Ky. 750, 102 S.W. 248; Francis v. Sturgill, 163 Ky. 650, 174 S.W. 753; McKinney v. Barker, 180 Ky. 526, 203 S.W. 303; Hardin v. Horn, 184 Ky. 548, 212 S.W. 573; Whitney v. Skinner, 194 Ky. 804, 241 S.W. 350; Greene v. Cawood, 230 Ky. 823, 20 S.W.2d 984; Kluemper v. Zimmer, 240 Ky. 225, 41 S.W.2d 1111; Hart v. Rose, 255 Ky. 576, 75 S.W.2d 43; Brandenberg v. Hurst, 290 Ky. 592, 162 S.W.2d 223.

The plaintiffs below place reliance on Wilson v. Brown, 109 Ky. 229, 58 S.W. 595. The holding there was that the establishment by the legislature of an administrative body to try election contests could not deprive the courts of the jurisdiction to determine whether an election for a particular office was "void." The underlying theory of that case, as later was made clear in Pratt v. Breckinridge, 112 Ky. 1, 65 S.W. 136, was that the establishment of election contest board, with power to determine contests of elections for other offices, was an invasion of the authority of the judicial branch of government. As held in Jackson v. Randolph, Ky., 311 S.W.2d 541, however, that is not the case with the statutes

authorizing legislative bodies to determine the elections of their own members.

The respondent judge, in an opinion upholding his jurisdiction of the case, adopted the view that the suit here in question, as to the *voter* plaintiff, was one to enforce Section 6 of the Kentucky Constitution and in a sense to vindicate the voter's right to exercise the franchise, and therefore was not a contest suit. The judge used for authority Johnson v. May, 305 Ky. 292, 203 S.W.2d 37. It is our opinion, however, that *Johnson* does not constitute authority for any such proposition.

In *Johnson* the election attacked as void was an election *on a public question*—local option. Holding the election void would maintain, status quo, the situation that prevailed before the election. Thus the individual voters who brought the suit could achieve an effective *remedy*. That is not so, however, with regard to an election for a public office, and particularly the office here in question. If the election here involved were declared void, a vacancy would exist in the membership of the board of aldermen, which would be filled by the board under KRS 83.040. The plaintiffs who brought the suit would obtain no vindication of their right to vote—no remedy for the deprivation of that right—no practical enforcement of Section 6 of the Kentucky Constitution. To hold the election void simply would mean that the office would be filled some other way; the voters would not retrieve their lost right to vote as would be the case in the voiding of an election on a public question.

■ We do not believe that the Kentucky Constitution intends that an individual voter have any justiciable right to keep from office a person who claims it by virtue of an election, no matter how illegal the election may be. It has been clearly established by previous opinions that a voter has no right to seek the ouster of a blatant usurper. Jenkins v. Congleton, 242 Ky. 46, 45 S.W.2d 456; Hermann v. Morlidge, 298 Ky. 632, 183 S.W.2d 807. How

then can a voter assert an interest in keeping from taking office a person illegally elected?

We find little persuasion in the claim of the plaintiffs below that they and others like them were disfranchised, for to invalidate the election would disfranchise almost 70,000 voters who cast their votes for the nominated candidates.

There is no inherent power in the courts *to pass upon the validity of elections* or to try contested elections. Lyon v. Holbrook, Ky., 316 S.W.2d 862; Patterson v. Knapp, 125 Ky. 474, 101 S.W. 379; Pflanz v. Foster, 155 Ky. 15, 159 S.W. 641; Cole v. Ridings, 271 Ky. 158, 111 S.W.2d 605; Wilson v. Town of Whitley, 159 Ky. 69, 166 S.W. 775.

The respondent circuit judge hereby is prohibited from entertaining the action here in question, and is directed to dismiss it.

MILLIKEN, C. J., and HILL, PALMORE and REED, JJ., concur, the latter two by separate concurring opinion.

STEINFELD, J., not sitting.

OSBORNE and NEIKIRK, JJ., dissenting.

OSBORNE, Judge (dissenting).

I must respectfully dissent from the majority opinion in this case. I believe the issues to be of extreme importance and I believe the court to be in error on three different points. The seriousness of the case can be visualized when it is understood that the issues presented here could involve elections of the highest officials in the state, and when it is further realized that two of the most important sections of our Constitution are involved and might seem to be somewhat in conflict. It is my most earnest opinion that the decision of the majority of the court in this case is in error in three respects.

First, in limiting the applicability of Section 6 of the Constitution to elections involving a public issue only. Second, in holding KRS 83.060 constitutional. Third, in denying jurisdiction to the courts to enforce Section 6 of the Constitution in instances where the legislature is given the right to judge the election of its own members under Section 38. I will discuss these issues in their respective order.

First, the majority opinion holds that Section 6 of the Constitution is not applicable in races for public office where there are statutory provisions for contest of the election. I believe this to be seriously in error. Section 6 of the Constitution reads as follows: "All elections shall be free and equal." It will be noted that the above section does not provide that only elections on public issues shall be free and equal. It provides that *all* elections shall be free and equal. There is very little contained in the Constitutional Debates upon the subject. It seems that the section was proposed to the convention and adopted with minimal debate. There is nothing in the records of the Convention to indicate that the framers of the Constitution had any intention that this provision should be restricted to elections on public issues only.

Section 6 is not an unusual section. It is found in the Constitutions of several of the states and has for many years been applied in a general manner and not limited to any particular type of election. See 29 C.J.S. Elections § 191(2), Free and Equal Rights, p. 544, wherein it is stated:

"Provision is contained in various constitutions requiring that elections be free or free and equal. The requirement is mandatory. Such a requirement has reference to the rights of the individual voter and not to uniformity of election procedures in different communities. The requirement of free elections does not deny the legislature the power to provide regulations and machinery and organization for exercising the elective franchise.

A provision that elections shall be free and equal means that elections shall be free in that every one entitled to vote shall have a reasonable opportunity of doing so, each voter being entitled to exercise his suffrage freely without restraint or coercion of any kind, and equal in that every vote cast shall have its decisive effect in the selection or choice to be made at the election, each vote, when cast, having the same influence as that of any other vote. *An election is not free and equal if a substantial number or percentage of qualified voters are deprived of their right to vote.* The constitutional provision covers only those persons who are qualified voters in a particular election." (Emphasis added).

In Wallbrecht v. Ingram, 164 Ky. 463, 175 S.W. 1022, this court held that Section 6 was applicable to all elections. Again, in Gross v. West, Ky., 283 S.W.2d 358, this court, as late as 1955, reaffirmed its holding in Wallbrecht and stated:

"In Wallbrecht v. Ingram [supra], a free and equal election within the meaning of the Constitution was defined as an election at which every person entitled to vote might do so if he desired. It was further defined as being one in which no substantial number of legal voters were from any cause denied the right to vote. The constitutional provision was held to apply to *all* elections and to be mandatory." (Emphasis added).

The effect of the majority opinion of this court is to hold that Section 6 of the Kentucky Constitution is no longer applicable to elections for public office. To me such holding is unthinkable. It, in effect, says that in Kentucky today we can have elections that are unfree and unequal except in instances where the voters are voting on a public issue. This is not constitutional construction nor interpretation. It is constitutional eradication.

I further believe the court is in error in holding KRS 83.060 to be constitutional. This statute gives to the legislative body of

a city of the first class the same right to judge the qualifications and election of its members as is given to the state legislature to judge the qualfications and election of its members under Section 38. My first observation concerning this act of the legislature is that had the framers of the Constitution intended for members of the city legislative bodies to have this power they would have granted it by naming them in Section 38, or, in lieu, they would have specifically granted to the legislature the right to extend this privilege to municipal bodies. The framers of the Constitution saw fit to do neither.

Several of our states' legislatures have attempted to extend this power to municipal bodies and in many instances when the question came before the courts they have held the extension valid on the grounds that the language of the extension is similar to that found in the Constitution making the legislative branch of government the judge of the qualifications of its members. This is not valid reasoning. For a criticism of it see 26 L.R.A.(N.S.), p. 209, wherein it is pointed out as follows:

"Courts assigning this reason, however, overlook the fact that the courts never had any jurisdiction to determine the election and qualification of members of the legislature, because the people, when giving judicial power to the courts by the Constitution, by the same instrument withdrew from the judicial power granted jurisdiction over disputes relative to membership in the legislature; whereas the courts always had jurisdiction to issue writs of quo warranto when not expressly deprived of it by statute. This reason is criticized in the following cases: People ex rel. Barton v. Londoner [13 Colo. 303, 22 P. 764], supra; Meachem v. New Brunswick, 73 N.J.L. 121, 62 Atl. 303; People ex rel. Hatzel v. Hall, 80 N.Y. 117; State ex rel. Mahoney v. McKinnon [8 Or. 493] and State ex rel. Anderton v. Kempf [69 Wis. 470, 34 N.W. 226], supra."

At one time in the history of our Commonwealth the legislature attempted to create an election contest board to determine the outcome of all elections. This court held the act to be unconstitutional as an infringement on the constitutional power of the judicial branch of government. See Pratt v. Breckinridge, 112 Ky. 1, 65 S.W. 136 (1901). There is no way to escape the conclusion that KRS 83.060 is subject to the same criticism. It likewise is an attempt to grant to municipal legislative bodies a judicial power that was not granted in the Constitution and to create a body judicial in nature that is expressly prohibited by the Constitution. For this reason our opinion in Jackson v. Randolph, Ky., 311 S.W.2d 541, is in error. The weakness of that case is patent to anyone with the slightest knowledge of the constitutional history of the subject. (See Appendix).

Provisions in the constitutions of the several states that permit the legislative body of the state to adjudge the qualification and election of its own members have a counterpart in the Constitution of the United States. Article 1, Section 5. There is considerable history behind these provisions starting in 1553 when one Alex Nowell was denied a seat in the House of Commons. The case that properly inspired the insertion of the provision in the Constitutions of the early colonies in America was the case of Robert Whalepole who was excluded from the House of Commons in 1712 and committed to the Tower. While thus incarcerated he was reelected to the House and again excluded. For a more complete history of this matter see Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed 491. In 1726 the Massachusetts House of Representatives excluded Gresham Woodle from membership. In 1758 North Carolina excluded Francis Brown for perjury. He was reelected twice in 1760 and excluded on both occasions. I point out the foregoing for the purpose of showing that prior to the adoption of most state Constitutions, including our own, it was a well-established rule that the legislative branch of government had a right to adjudge the election

and qualifications of its own members and to expel those whom it did not believe had a legal right to sit. This right has been preserved to the legislative branch of government for the reason that it is a co-equal branch with the judiciary. A city legislative body which has the power to legislate for a limited jurisdiction is by no stretch of the imagination a co-equal branch of government with the judiciary of a nation or a state. Therefore, there is no historical precedent for extending this privilege to municipal legislative bodies. ʻ

In Jackson v. Randolph, supra, this court held that the legislature by virtue of Section 153 of the Constitution had authority to grant to the legislative bodies of municipalities the right to adjudge the election and qualifications of their own members the same as did the legislature under Section 38. The court in that opinion cites no legal precedent for its holding. An examination of the material contained in the Appendix to this opinion will demonstrate that at the time there existed more legal precedent for setting up legislatively an independent body to determine the election of judges and clerks of the Court of Appeals than there was for permitting municipal bodies to determine the election and qualifications of their members. Article 4, Section 14 of the Constitution of 1850 expressly so provided and it is clear that this article was brought into Section 153. However, this court specifically held that the legislature could not create such board in Pratt v. Breckinridge, supra. From an examination of the *Pratt* case and the *Jackson* case it becomes clear that this court has never previously examined the true nature of Section 153 nor explored its historical origin. This may explain why it was not utilized in one case where precedent would indicate that it should have been and was extended in another where there was no precedent for its extension.

*My third reason for believing the court erred in this case is because it denied jurisdiction to the judicial branch of government to enforce the provision of Section 6 of the Constitution on the grounds that a city legislative body acting under KRS 83.060 has the same powers to adjudge the election and qualifications of its members as is granted to the legislature by Section 38 of the Constitution. The court further determines that the power to extend this immunity to city legislative bodies is given to the legislature by Section 153 of the Constitution.*[1]

To me Section 153 only authorizes the legislature by general law to set up the election machinery and insofar as it bestows upon the legislature the power to provide for the trial of contested elections this power is limited to trial within the judicial branch of government. The word trial as commonly used is associated with the judiciary and not other branches of the government. See Pratt v. Breckinridge, 112 Ky. 1, 65 S.W. 136; Wilson v. Brown, 109 Ky. 229, 58 S.W. 595. In any event if it should be concluded that the legislature had the authority under Section 153 to permit city legislative boards to adjudge the election and qualifications of their members, that power can be no greater than that bestowed directly on the general assembly under Section 38. It is my contention, as hereinafter set out, that this court would have jurisdiction if the contest here in question were for seats in the General Assembly.

The Supreme Court of the United States has recently faced the difficult problem

---

1. Section 38 provides: "Each House to judge qualifications, elections and returns of its members; contests. Each House of the General Assembly shall judge of the qualifications, elections and returns of its members, but a contested election shall be determined in such manner as shall be directed by law."

Section 153 provides: "Power of General Assembly as to elections. Except as otherwise herein expressly provided, the General Assembly shall have power to provide by general law for the manner of voting, for ascertaining the result of elections and making due returns thereof, for issuing certificates or commissions to all persons entitled thereto, and for the trial of contested elections."

For constitutional history of Section 153 see Appendix.

presented to the judiciary in determining the extent of the rights of a legislative body to judge the qualifications and election of its own members. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Powell v. McCormack, supra. In Baker v. Carr suit was instituted by certain voters of Tennessee alleging that because of the power, manner and imbalance in the population in districts in Tennessee, a vote for members of the Tennessee legislature did not count for the same as votes for other members. The district court dismissed the complaint on the grounds that it lacked jurisdiction of the subject matter. The basis for this holding was that legislative bodies inherently have the power to adjudge the qualification and election of their own members and, therefore, the courts could not inquire into the electoral process of these members. The Supreme Court of the United States held that this was error and that the courts have jurisdiction of the subject matter any time a citizen alleges that he is being deprived of his rights under the Constitution. A more serious question was presented to the court in that case in that it was contended that even though the court had jurisdiction, the subject was nonjusticiable because it was a matter in which the courts were injecting themselves into a political question, to-wit, one exclusively within the power of another branch of government—the legislature. The court rejected this contention. In dealing with the question the court quite aptly observed that in all instances the court ultimately must be the final interpreter of the Constitution. In the course of its opinion the court summarizes its position as follows:

"We have said that 'In determining whether a question falls within (the political question) category, the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations.' Coleman v. Miller, 307 U.S. 433, 454–455, 59 S.Ct. 972, 982, 83 L.Ed. 1385. The non-

justiciability of a political question is primarily a function of the separation of powers. Much confusion results from the capacity of the 'political question' label to obscure the need for case-by-case inquiry. Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution. To demonstrate this requires no less than to analyze representative cases and to infer from them the analytical threads that make up the political question doctrine. We shall then show that none of those threads catches this case."

This position was reinstated and fortified by the court in Powell v. McCormack, supra, where the court stated:

"In other words, whether there is a *textually* demonstrable constitutional commitment of the issue to a coordinate political department' of government and what is the scope of such commitment are questions we must resolve for the first time in this case. For, as we pointed out in Baker v. Carr, supra, '(d)eciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution.'" (Emphasis added.)

In Powell v. McCormack, supra, the Supreme Court concluded that Article 1, Section 5, only granted to the Congress of the United States the power to determine if the members had those qualifications required by the Constitution and did not invest in that body discretion to impose other qualifications. I cannot read into Sections 38 and 153 of the Constitution of Ken-

tucky any broader powers on the part of that legislative body than those granted to the Congress of the United States by Article 1, Section 5. Applying these principles to the case before us it is patently clear that the legislature of Kentucky was never intended and never had power to determine whether or not an election in the state was conducted in a free and equal manner as required by Section 6 of the Constitution. This is something so clearly within the power of the judiciary that in my opinion it is beyond the pale of argument.

As far as Baker v. Carr, supra, and Powell v. McCormack, supra, are concerned, it is elementary constitutional law that the highest courts of the several states would not have to construe their state Constitutions in accordance with the construction placed upon Article 1, Section 5, by the Supreme Court. To put the matter another way, this court would be free to give Section 38 of the Kentucky Constitution a broader interpretation than the Supreme Court gives to Article 1, Section 5, in the Baker and Powell cases. However, in doing so we would run a risk if we were called upon to determine the power of Congress in the seating of its own members in a contested election wherein members of the United States Senate or members of the House were elected. For here we would be faced with a situation in determining the scope of Article 1, Section 5, wherein we would be bound by the interpretation placed upon that Article by the Supreme Court. For this reason, I believe the future course of justice would demand that we adopt at this time the principles and reasoning in Baker v. Carr, supra, and Powell v. McCormack, supra, for the purpose of this case.[2]

Petitioners allege in the case before us that they were prohibited from voting by

way of writing in the name of their candidate, C. J. Hyde, by virtue of the fact that the voting machines were so programmed as to preclude the writing in of the candidate's name and in many instances so programmed that when the candidate's name was written in and the party lever utilized a vote was cast for their candidate's opponent. They allege that because of these facts large numbers of voters were prevented from participating in the election. I believe these allegations are sufficient to entitle them to a hearing for the purpose of determining whether the election was a free and equal election as required by Section 6 of the Constitution of this Commonwealth.

For the foregoing reasons, I respectfully dissent.

NEIKIRK, J., joins in this dissent.

### APPENDIX

The constitutional history of Section 153 of the present Constitution of Kentucky can be found in Volume II, page 1811, of the Constitutional Debates. It appears as follows:

"The Delegate from the Fifth District of Louisville has called my attention to a section which I had overlooked, and which reads as follows:

Sec. 10. Except as otherwise herein expressly provided, the General Assembly shall have power to provide by general law for the manner of voting, for ascertaining the result of elections, for issuing certificates or commissions to all persons entitled thereto, and for the trial of contested elections.

Will any gentleman in this body object to a section of that kind? I can conceive of but one objection that can be made to

2. See Roudebush v. Hartke, 404 U.S. ——, 92 S.Ct. 804, 30 L.Ed.2d —— decided by the Supreme Court of the United States on February 23, 1972, wherein that court held that until the legislative body determines which of two contesting candidates should be seated the controversy between them as to who won the election remains alive and is a justiciable issue which addresses itself to the judicial department of government for determination.

it, and that is, that it is not indispensable that it be incorporated in the organic law. It is, substantially, the present law of the State, and is found diffused—if I may use such an expression—through many sections of the present Constitution; and to avoid this repetition, the Committee has incorporated it in one section. My colleague on the Committee has marked on the margin numerous sections of the Constitution in which almost this identical language can be found. Article 2, Section 20; Article 4, Section 14; Article 4, Section 26; Article 4, Section 35; Article 8, Section 14 and Article 8, Section 25. Why say that over and over again? Why not say it in one section, in a business-like way, as becomes business men, and drop it?"

The sections of the Constitution of 1850 referred to by the gentleman in the debates as being incorporated into Section 183 read as follows:

### Article II, Section 20

"Each house of the general assembly shall judge of the qualifications, elections, and returns of its members; but a contested election shall be determined in such manner as shall be directed by law."

### Article IV, Section 14

"The general assembly shall direct, by law, the mode and manner of conducting and making due returns to the secretary of state of all elections of the judges and clerk or clerks of the court of appeals, and of determining contested elections of any of these officers."

### Article IV, Section 26

"If a vacancy shall occur in the office of judge of the circuit court, the governor shall issue a writ of election to fill such vacancy for the residue of the term: *Provided*, That if the unexpired term be less than one year, the governor shall appoint a judge to fill such vacancy."

### Article IV, Section 35

"Judges of the county court, and justices of the peace, shall be conservators of the peace. They shall be commissioned by the governor. County and district officers shall vacate their offices by removal from the district or county in which they shall be appointed. The general assembly shall provide by law the manner of conducting and making due return of all elections of judges of the county court and justices of the peace, and for determining contested elections, and provide the mode of filling vacancies in these offices."

### Article VIII, Section 14

"Returns of all elections by the people shall be made to the Secretary of State for the time being, except in those cases otherwise provided for in this Constitution, or which shall be otherwise directed by law."

### Article VIII, Section 25

"The General Assembly shall provide, by law, for the making of the returns by the proper officers, of the election of all officers to be elected under this Constitution; and the Governor shall issue commissions to the Auditor, Register, Treasurer, President of the Board of Internal Improvement, Superintendent of Public Instruction, and such other officers as he may be directed, by law, to commission, as soon as he has ascertained the result of the election of those officers respectively."

PALMORE, Judge (concurring).

Section 6 of the Kentucky Constitution is not in issue in this case except as it is involved in the argument (not made by any party) that the action here is not one to contest an election or to determine the winner of an election but is one to enforce the constitutional requirement of free and equal elections. The majority opinion holds

simply that an individual citizen or voter cannot enforce Section 6 through the means of an action to declare invalid an election previously held for a public office. The opinion does *not* hold that Section 6 applies only to public issues and not to elections for public offices. There is of course nothing in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, or in Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed. 2d 491, that purports to recognize in a citizen or voter the right to bring an action to adjudge invalid an election previously held for a public office. Baker v. Carr dealt with the right of action to insure *future* voting rights. Powell v. McCormack had nothing to do with elections.

The constitutionality of KRS 83.060 likewise is in issue only to the limited extent that the plaintiffs in the action below maintain the section is unconstitutional if it is construed to exclude court jurisdiction of an action to have an election declared void, as distinguished from an action to determine the winner of the election. The plaintiffs below do not contend that city legislative bodies may not be given exclusive authority to determine the elections of their members. The majority opinion holds only that the authority of the city legislative body includes the power to determine that there is no winner, by reason of invalidity of the election, as well as the admitted power to declare a winner. There was no occasion in this case for the court to repass on the validity of the basic grant of power to city legislative bodies to determine the elections of their members, which had been expressly decided in Jackson v. Randolph, Ky., 311 S.W.2d 541, and implicitly accepted in a long line of previous decisions. Had the question been in issue, I would have been impelled to give most serious consideration to the fact that for 80 years under the present constitution of Kentucky city legislative bodies have been recognized to have the authority in question.

REED, J., joins in this concurring opinion.